# Wheeling.

## WILLIAM KARNES *vs.* ELIJAH M. LEE.

### January Term, 1870.

1. Bonds given for real estate in 1862, and due in 1863 and '64, in Greenbrier county, on which a vendor's lien is retained, express on their face that they are payable "in currency." A bill is filed in 1866, to enforce the lien, and the answer alleges that the complainant expected to receive, and the defendant purchased expecting to pay in, confederate money, which the defendant is still willing to do, but the complainant refuses, &c. To this answer there is no replication, and no depositions are taken by the defendant. HELD:

> That a decree for the sale of the real estate on bill and answer is not erroneous, for even if everything in the answer is to be taken as true, because of there being no replication, the matters therein alleged are not sufficient to defeat the complainant's right to recover. The averment that the complainant sold the property expecting to be paid in confederate money, is not equivalent to an averment that he was to be paid in that money. And although he may have expected to do so, and did in fact receive a part of it in confederate money, yet he was not bound to receive any further sum unless he was willing to do so.

2. The fact that through ignorance or carelessness counsel may fail to make out a case as it might have been made out, is not sufficient ground for the filing of a petition for a rehearing.

William Karnes filed his bill in the circuit court of Greenbrier county, at August rules, 1866, against Elijah M. Lee, alleging that on the 3d of December, 1862, he had sold to the defendant a house and lot in Lewisburg, for 900 dollars; that he executed a title bond for the same, whereby he bound himself to make a deed for the premises whenever the whole purchase money should be paid off; that 400 dollars had

been paid, and the residue was unpaid; 250 dollars being due January 1st, 1864, and the remaining 250 dollars became due January 1st, 1865; that he held the bonds of the defendant for the sums just mentioned, which were filed with the bill. It was expressed on their face that they were to be paid "in currency." He asked the court to enforce his vendor's lien by a sale of the property.

Lee answered that it was true he made the purchase, but that he did not do so at the value of the property prior to the war; that the complainant sold the property expecting to be paid in confederate money, and the defendant expected to pay for the same in such money; that he had paid 400 dollars in such currency, and the complainant had made no objection to receiving it; that he was willing to pay the remaining bonds by paying the amount thereof in confederate money; and that he would pay the equivalent of confederate money in Federal money. There was no replication to the answer. Depositions were taken as to the value of the property before the war, which was placed at eight or nine hundred dollars, and at eight hundred dollars in 1867, and that it was worth, in December, 1862, 1500 dollars in confederate money.

The court below decreed a sale of the property at the September term, 1867, and in December following it was sold for the price of 625 dollars. The sale was objected to by the defendant on the grounds of inadequacy of price.

At the April term following, the defendant offered a petition, which was permitted to be filed, alleging that his counsel had failed to make a proper defense to the suit; that the term "in currency" in the bonds, was intended to mean confederate money, as no other currency was used in circulation in the county of Greenbrier, in December, 1862, when the sale and purchase were made, and that he had tendered the amount of the bonds as they fell due in confederate money, but the complainant refused to accept and receive it. He asked that the cause be reheard. At the same term the petition was filed, the court ordered the

cause to be reopened for the purpose of being reheard, with leave to introduce new proof.

At the August term, 1868, the cause was again heard, and the decree ordering a sale of the property was set aside and annulled, and the bill dismissed.

From this decree the complainant, Karnes, appealed to this court.

Hon. N. Harrison, judge of the circuit court of Greenbrier county, presided on the hearing of the cause.

*Dennis* for the appellant.

*Snyder* for the appellee.

MAXWELL, J. This was a bill filed in the circuit court of Greenbrier county, by Karnes, to assert a vendor's lien against a house and lot sold by him to the defendant. The bill charges that the sale was for 900 dollars; that 400 dollars had been paid; that 500 dollars was unpaid, with interest on 250 dollars, part thereof, from the 1st day of January, 1864, and interest on 250 dollars, residue thereof, from the 1st day of January, 1865; that complainant executed his title bond to make a proper deed on payment of the purchase money; that there is a vendor's lien on said house and lot, and prays that the same may be sold, &c. The defendant answered, and among other things averred that: "The complainant sold the property expecting to be paid in what was called confederate money, and this respondent purchased it intending to pay for it in the same currency. It was the intention of both parties to the transaction, that the bonds executed by respondent were to be paid in confederate money, as indeed appears upon the face of the bond. Your respondent paid four hundred dollars in that currency, and the complainant made no objection to receiving it. Your respondent also tendered the same currency in payment of one of the bonds filed with the bill of the complainant, and it was refused. He was then ready, and

has always been since, and is now, to perform his contract specifically by paying to the said. complainant the amount of his said bonds in confederate money," &c.

There was no replication to the answer, but depositions were taken by the complainant, from which it appears that the property was worth 800 or 900 dollars in 1860, and that it was worth, in 1867, at the time the depositions were taken, 800 dollars. The depositions also show that at the time of the sale of the property in December, 1862, it was worth in confederate money fifteen hundred dollars. Upon this state of the case the court rendered a decree to the effect that there was a lien on the property for the payment of the unpaid purchase money, and decreed that it should be sold for that purpose, under which decree it was afterwards sold at the price of 625 dollars. The sale was objected to by the defendant on account of inadequacy of price.

The defendant also filed his petition averring that the decree worked great injustice to him, and asked that the case might be reheard and the decree set aside. The petition was allowed to be filed, and the case was reheard, the sale set aside, and the complainant's bill dismissed.

It is claimed here by the appellant that it was error in the court to .allow the case to be reheard, and that it was also error to dismiss the bill. It is insisted for the defendant that the decree for the sale of the property is erroneous on the bill and answer, because there is no replication to the answer, and therefore everything alleged in the answer is admitted.

If everything alleged in the answer be true, are the matters therein alleged sufficient to defeat the complainant's right to recover? It is claimed that the answer shows that the contract was for confederate money. The averment in the answer is, that the complainant sold the property expecting to be paid in what was called confederate money, and that the respondent purchased it intending to pay for it in the same currency; that it was the intention of both parties to the transaction, that the bonds, executed by the res-

pondent, were to be paid in confederate money, as appears upon the face of the bonds. By reference to the bonds, which are filed with the bill, it does not appear upon the face of them that they are to be paid in confederate money. The averment that the complainant sold the property expecting to be paid, and the defendant purchased it intending to pay for it, in confederate money, is by no means equivalent to an averment that the contract and agreement was that it was to be paid in confederate money. The complainant may have expected to be paid in confederate money, yet he was not bound to receive payment in that money, if he did not see proper to do so, unless that was his contract. The answer avers that the complainant received 400 dollars of the purchase money in confederate money, and it also avers that he refused to receive 250 dollars, the amount of one of the bonds sued on, when it was tendered to him by the defendant.

Because he received the 400 dollars of confederate money which he was not bound by his agreement to receive, it does not therefore follow that he was bound to receive any further sum in the same sort of money, unless he was willing to do so. The decree for the sale of the property for the unpaid purchase money was, therefore, correct upon bill and answer. The case made for the complainant on bill and answer, is very much strengthened by the depositions taken by complainant, before the decree was rendered, showing the value of the property. The appellant claims that the court erred when it allowed the defendant to file his petition, and allowed a new trial or rehearing. There is not sufficient ground assigned in the petition, to warrant a rehearing. The fact that his counsel, through ignorance or carelessness, may have failed to make out the defendant's case, as it might have been made, is not sufficient cause. As the grounds assigned are not sufficient, it does not become necessary to inquire whether the petition was filed in time. It was error, therefore, to allow the petition to be filed and to grant a rehearing.

As to that part of the decree which set aside the sale made of the property, there can be no objection to it.

The decree complained of must be reversed with costs to the appellant, and the decree rendered at the April term, 1868, and the final decree so far as it dismissed the complainant's bill, be set aside and annulled; and that the decree directing a sale of the property, together with so much of the final decree as set aside the sale made, be affirmed, and that a resale be ordered.

The other judges concurred.

DECREE REVERSED.